**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| TONI PERRY, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>MANNA PRO PRODUCTS, LLC,<br><br>     Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Toni Perry ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Manna Pro Products, LLC ("Manna" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all people in the United States who purchased the following Nutri-Vet Hip & Joint supplements for dogs (the "Supplements"):

- Nutri-Vet Hip & Joint Chewables For Dogs, Regular Strength
- Nutri-Vet Hip & Joint Chewables For Dogs, Extra Strength
- Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength
- Nutri-Vet Hip & Joint Soft Chews For Dogs, Regular Strength
- Nutri-Vet Hip & Joint Soft Chews For Dogs, Extra Strength
- Nutri-Vet Hip & Joint Biscuits For Dogs
- Nutri-Vet Joint health DS Plus MSM Chewables For Dogs, Maximum Strength
- Nutri-Vet Joint Health Plus Perna Mussel Chewables For Dogs, Standard Strength Plus
- Nutri-Vet Advanced Cetyl-M Joint Action Formula For Dogs

2. Defendant markets the Supplements as dog arthritis products that help maintain and improve joint health. The product names of each of the Supplements refers to joint health.

1

Defendant also writes the following on the labels of the Supplements: "Helps supports joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."




3. The top active ingredient in the Supplements is glucosamine hydrochloride. Defendant explains on its website that the Supplements "contain ingredients like glucosamine, a key building block for making cartilage" and that glucosamine "help[s] maintain healthy canine joint function and connective tissue."

4.       The second active ingredient in the Supplements is chondroitin sulfate, which, according to Defendant, "protects existing cartilage and slows breakdown."

5.       Unfortunately for consumers, however, the Supplements are a sham.  Decades of studies and peer-reviewed tests have repeatedly shown that supplements containing glucosamine and chondroitin do not improve joint function in dogs, reduce paid or otherwise help in any way whatsoever in treating canine osteoarthritis.

6.       In 2003, a double-blind randomized controlled trial ("RCT") involving 71 dogs over 70 days compared the efficacy of Cosequin (a supplement with glucosamine and chondroitin) against two non-steroidal anti-inflammatory drugs ("NSAIDs") and a placebo.[1]  The authors objectively assessed improvements in pain-related functional impairment by measuring ground reaction forces of arthritic limbs and there was subjective assessment by surgeons and owners of gait, joint mobility, joint pain and discomfort, lameness, and activity.  The researchers found that dogs treated with the supplement "showed no significant response in terms of the objective gait analysis or either of the subjective assessments during the study," while there was a significant response with one of the NSAIDs.  Likewise, as to the owners' subjective assessment, the supplement containing glucosamine and chondroitin provided "no significant improvements . . . ."

7.       In 2017, a double-blind, randomized and placebo-controlled trial studied 60 dogs over 97 days.[2]  Half of the dogs were given a supplement with glucosamine and chondroitin, and the other half were given a placebo.  The authors concluded that the supplement "did not have a

---

[1] Moreau, M., et al., *Clinical Evaluation Of A Nutraceutical, Carprofen And Meloxicam For The Treatment Of Dogs With Osteoarthritis*, Vet. Record No. 152 at 323-29 (2003).
[2] Scott, et al., *Efficacy Of An Oral Nutraceutical For The Treatment Of Canine Arthritis: A Double-Blind Randomized, Placebo-Controlled Prospective Clinical Trial*, Vet. Comp. Ortho. Traumatol., 30 at 318-23 (2017).

3

beneficial treatment effect when compared to placebo treatment when evaluated by [subjective] daily owner questionnaire and [objective] patient activity counts."

8. Other publications also indicate that Defendant's product claims about the Supplements are false. Plumb's Veterinary Handbook, in both its 2008 and 2017 editions, noted that glucosamine/chondroitin supplements are "[w]ell tolerated, but efficacy is uncertain." The Banfield Journal concluded in 2010 that "the benefits of using a combination of glucosamine hydrochloride and chondroitin sulfate nutraceuticals to improve symptoms associated with canine and feline joint disease has yet to be determined."

9. Defendant, a large and sophisticated company, is undoubtedly aware of these studies and knows that the Supplements are ineffective. Nevertheless. It continues to sell them to unsuspecting consumers nationwide.

10. Plaintiff is a purchaser of the Supplements who asserts claims for fraud, breach of express warranty, breach of implied warranty, unjust enrichment and violations of the Magnuson-Moss Warranty Act and the consumer protection laws of the state of New York, on behalf of himself and all similarly situated purchasers of the Supplements.

## PARTIES

11. Plaintiff Toni Perry is a citizen of New York who resides in Rome, New York. Ms. Perry has purchased Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength numerous times over the years for her arthritic black Labrador. Most recently, she purchased a 150-count bottle of Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength in or about April 2021 from Chewy.com for approximately $35.99. Prior to her purchases, Ms. Perry carefully read the bottle's labeling, including the representations that it was a "Hip & Joint" product for dogs, and that the product would "help[] support[] joint health, flexibility and

4

cartilage in dogs of all ages, including older, previous injured working dogs." Ms. Perry understood these statements to mean that the Supplements would effectively treat her dog's hip and joint pain and osteoarthritis, and relied on them in that she would not have purchased the Supplements at all, or would have only been willing to pay a substantially reduced price for the Supplements, had she known that these representations were false and misleading. Ms. Perry gave her dog the Supplements as directed, but they did not have any impact on her joint pain or osteoarthritis.

12. Defendant Manna Pro Products, LLC is a Missouri corporation with its principal place of business at 12545 Olive Blvd., Suite 132, St. Louis, MO 63141. Manna Pro Products, LLC is the manufacturer and distributor of the Supplements.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

14. This Court has personal jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in this District, many of the acts and transactions giving rise to this action occurred in this District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is incorporated and has its principal place of business in this District.

## CLASS ALLEGATIONS

16. Plaintiff seeks to represent a class defined as all persons in the United States who

purchased the Supplements (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

17.     Plaintiff also seeks to represent a subclass defined as all Class members who purchased the Supplements in New York (the "New York Subclass").

18.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are millions of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

19.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, whether Defendant's labeling, marketing and promotion of the Supplements is false and misleading.

20.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

21.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in

complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

22. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class or Subclass on an individual basis to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## COUNT I
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

23. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

24. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

25. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Supplements.

26. The foregoing deceptive acts and practices were directed at consumers.

27. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Supplements to positively impact joint health in dogs.

28. Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that they were a "Hip & Joint" product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

29. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

30. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

31. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

32. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Supplements

8

are a "Hip & Joint" product for dogs that "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

33. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

34. This misrepresentation has resulted in consumer injury or harm to the public interest.

35. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that they were a "Hip & Joint" product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

36. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT III
### Breach of Express Warranty

37. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

38. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

9

39. In connection with the sale of the Supplements, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Supplements were a "Hip & Joint" product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

40. In fact, the Supplements do not conform to the above-referenced representations because they are ineffective.

41. Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that they were a "Hip & Joint" product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

42. Plaintiff's counsel notified Defendant of her claims in a demand letter, sent via FedEx, on January 26, 2022.

## COUNT IV
**Fraud**

43. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

44. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

45. As discussed above, Defendant misrepresented on the Supplement's packaging that they were a "Hip & Joint" product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

10

46. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant is a top distributor of dog supplements in the United States that is undoubtedly aware of the studies finding that supplements with glucosamine and chondroitin are ineffective for joint health in dogs. Nonetheless, Defendant continues to sell its ineffective and worthless Supplements to unsuspecting consumers.

47. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Supplements.

48. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
## Magnuson-Moss Warranty Act

49. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50. Plaintiff brings this case individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

51. The Supplements are a consumer product as defined in 15 U.S.C. § 2301(1).

52. Plaintiff and members of the Class and the New York Subclass are consumers as defined in 15 U.S.C. § 2301(3).

53. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

54. In connection with the sale of the Supplements, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that they were a "Hip & Joint"

product for dogs that would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."

55. In fact, the Supplements are ineffective for their intended purpose and do not conform to this representation.

56. By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and the members of the proposed Class and the New York Subclass pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the members of the Class and the New York Subclass.

57. Plaintiff and the members of the Class and the New York Subclass were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Supplements if they had known that they were ineffective for their stated purposes, and (b) they overpaid for the Supplements on account of the misrepresentations.

## COUNT VI
**Unjust Enrichment**

58. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

59. Plaintiff brings this case individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

60. Plaintiff and Class members conferred a benefit in the form of monies paid on Defendant by purchasing the Supplements.

61. Defendant voluntarily accepted and retained this benefit.

62. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the worthless Supplements, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 1, 2022　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**BURSOR & FISHER, P.A.**

　　　　　　　　　　　　　　　　　　　　By:  */s/ Yitzchak Kopel*
　　　　　　　　　　　　　　　　　　　　　　　　Yitzchak Kopel

　　　　　　　　　　　　　　　　　　　　Yitzchak Kopel
　　　　　　　　　　　　　　　　　　　　888 Seventh Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　　　Telephone: (646) 837-7150
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 989-9163

Email: ykopel@bursor.com

*Attorneys for Plaintiff*