UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TONI PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-cv-00127-AGF |
| | ) | |
| MANNA PRO PRODUCTS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a New York resident, filed this putative class action seeking damages and injunctive relief on behalf of persons who purchased various versions of Defendant's Nutri-Vet Hip & Joint supplements for dogs.  Plaintiff alleges that the supplements contain false or misleading labels and asserts claims alleging deceptive practices in violation of New York Gen. Bus. Law § 349 (Count I), false advertising in violation of New York Gen. Bus. Law § 350 (Count II), breach of express warranty (Count III), fraud (Count IV), breach of warranty under the Magnuson-Moss Warranty Act (Count V), and unjust enrichment (Count VI).  She seeks damages and injunctive relief.

The matter is now before the Court on Defendant's motion (ECF No. 14) to dismiss the complaint for failure to state a claim and, as to the request for injunctive relief and as to product versions not actually purchased by Plaintiff, for lack of standing.  For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

The following facts are taken from the complaint.  The Court also considers "[d]ocuments necessarily embraced by the pleadings," meaning "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (holding that such documents may be considered on a Rule 12(b)(6) motion); *see also Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (holding the same as to "documents incorporated into the complaint by reference").

Defendant markets and sells the following joint health supplements for dogs: Nutri-Vet Hip & Joint Chewables For Dogs, Regular Strength; Nutri-Vet Hip & Joint Chewables For Dogs, Extra Strength; Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength; Nutri-Vet Hip & Joint Soft Chews For Dogs, Regular Strength; Nutri-Vet Hip & Joint Soft Chews For Dogs, Extra Strength; Nutri-Vet Hip & Joint Biscuits For Dogs; Nutri-Vet Joint health DS Plus MSM Chewables For Dogs, Maximum Strength; Nutri-Vet Joint Health Plus Perna Mussel Chewables For Dogs, Standard Strength Plus; Nutri-Vet Advanced Cetyl-M Joint Action Formula For Dogs (collectively, the "Supplements").

The Supplements contain the following language on their labels: "Helps supports joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."  ECF No. 1, Compl. at ¶ 2.  Further, Defendant states on its website that the Supplements "contain ingredients like glucosamine, a key building block for making cartilage"; that glucosamine "help[s] maintain healthy canine joint function and

2

connective tissue"; and that the Supplements also contain chondroitin sulfate, which "protects existing cartilage and slows breakdown." *Id.* at ¶¶ 3-4.

Plaintiff alleges that these representations are false. In support of such allegation, Plaintiff cites the following peer-reviewed clinical studies comparing the efficacy of a supplement containing glucosamine and chondroitin against a placebo: (1) Moreau, M., et al., *Clinical Evaluation Of A Nutraceutical, Carprofen And Meloxicam For The Treatment Of Dogs With Osteoarthritis*, Vet. Record No. 152 at 323-29 (2003) (the "Moreau Study"); and (2) Scott, et al., *Efficacy Of An Oral Nutraceutical For The Treatment Of Canine Arthritis: A Double-Blind Randomized, Placebo-Controlled Prospective Clinical Trial*, Vet. Comp. Ortho. Traumatol., 30 at 318-23 (2017) (the "Scott Study").

Plaintiff also cites Plumb's Veterinary Handbook, which noted that glucosamine/chondroitin supplements are "[w]ell tolerated, but efficacy is uncertain"; and a journal publication from 2010 that stated that "the benefits of using a combination of glucosamine hydrochloride and chondroitin sulfate nutraceuticals to improve symptoms associated with canine and feline joint disease has yet to be determined." Compl. at ¶ 8.

Defendant has attached to its motion to dismiss copies of the Moreau and Scott Studies, the Plumb Veterinary Handbook, and the journal article cited by Plaintiff. Plaintiff does not dispute that the Court may consider the publications cited in the complaint on this motion to dismiss. Nor does Plaintiff dispute that the exhibits attached to Defendant's briefs are authentic and accurate copies of those publications.

3

The Moreau Study states: "The aim of this clinical, prospective, randomised, double-blind study was to evaluate the efficacy, tolerance and ease of administration of these two NSAIDs and a nutraceutical product, in order to identify the best treatment for dogs with osteoarthritis. The results were evaluated in three ways: by a subjective evaluation by the owners, by a subjective clinical evaluation by a veterinary orthopaedic surgeon, and by an objective analysis of the gait of a group of dogs with chronic arthritic pathologies."  ECF No. 17-1 at 16, Def.'s Ex. 1-C.

Likewise, the Scott Study states that its objective was to "assess the safety and efficacy of an orally administered nutraceutical [containing glucosamine and chondroitin] for the treatment of clinical osteoarthritis (OA) in dogs."  ECF No. 17-1 at 25, Def.'s Ex. 1-D.  The Scott Study concluded that "[t]reatment with oral Glu/CS+ for a 90 day treatment period when compared to placebo treatment did not result in a significant increase in activity counts in dogs with clinical OA.  However, owner assessment scores similarly improved throughout the study period for dogs in both groups, suggesting a caregiver placebo effect in this outcome measure."  *Id.*

The excerpt of the Plumb Veterinary Handbook on which Plaintiff relies states that glucosamine/chondroitin sulfate supplements "can be used as an adjunctive treatment for osteoarthritis or other painful conditions in horses, cats, dogs, etc" and that the supplement is "[w]ell tolerated, but efficacy is uncertain."  ECF No. 17-1 at 7, Def.'s Ex. 1-A.

The journal article on which Plaintiff relies states as its "clinical bottom line":

4

The limited number of high quality clinical trials and the lack of data on objective measures of efficacy preclude recommendations of glucosamine hydrochloride and chondroitin sulfate nutraceuticals as a sole medical treatment for joint disease in dogs and cats.

In brief, the benefits of using a combination of glucosamine hydrochloride and chondroitin sulfate nutraceuticals to improve symptoms associated with canine and feline joint disease has yet to be determined.

ECF No. 17-1 at 11, Def.'s Ex. 1-B.

Plaintiff, purchased Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength numerous times over the years for her arthritic dog.  Most recently, she purchased a 150-count bottle of Nutri-Vet Hip & Joint Chewables For Dogs, Advanced Strength in or about April 2021 from Chewy.com for approximately $35.99.  Prior to her purchases, Plaintiff carefully read the bottle's labeling, including the representations that it was a "Hip & Joint" product for dogs, and that the product would "help[] support[] joint health, flexibility and cartilage in dogs of all ages, including older, previous injured working dogs."  Plaintiff gave her dog these Supplements as directed but alleges that they did not have any impact on the dog's "joint pain or osteoarthritis."  Compl. at ¶ 11.

## ARGUMENTS OF THE PARTIES

Defendant argues that each of Plaintiff's claims fails because Plaintiff has not plausibly alleged that Defendant made any false or misleading representations. Specifically, Defendant highlights the "disconnect" between the publications offered to demonstrate falsity, which address the efficacy of glucosamine and chondroitin in treating osteoarthritis or joint disease, and the actual content of Defendant's representations, which state only that the Supplements promote or maintain joint health.

5

Further, Defendant contends that Plaintiff has failed to plausibly allege an injury because her statement that the Supplements had no impact on her dog's joint pain or osteoarthritis is conclusory.

Next, Defendant argues that each of Plaintiff's claims fails for separate reasons, including that Plaintiff fails to satisfy Rule 9(b)'s particularity standard or to plead scienter with respect to fraud claims; Plaintiff fails to plausibly allege timely notice with respect to the warranty claims; and Plaintiff's unjust enrichment claims is duplicative of her other claims.

Finally, Defendant argues that Plaintiff lacks standing to pursue injunctive relief because she has not pled a threat of ongoing or future harm, and that Plaintiff likewise lacks standing to assert claims involving products that she did not purchase.

In response, Plaintiff argues that Defendant's focus on osteoarthritis studies as compared to general joint health is a "distinction without a difference" because it is well known that joint health (or lack thereof) is a symptom of osteoarthritis.  Further, Plaintiff cites cases in which federal courts allowed similarly-pled claims relating to joint-health supplements to go forward, including *Lytle v. Nutramax Lab'ys, Inc*., 2019 WL 8060070, at *6 (C.D. Cal. Sept. 26, 2019), in which the plaintiff relied on the same Moreau and Scott Studies to establish falsity.

Plaintiff further argues that she has adequately pled injury in the form of her purchase price because she would not have purchased the Supplements had she known that the representations were false.  Next, Plaintiff maintains that she has pled fraud with particularity, that the sufficiency and timeliness of any required notice is a question for

6

the jury, and that her unjust enrichment claim is properly pled in the alternative.  Finally,

Plaintiff contends that Defendant's arguments related to standing are not true challenges

to standing but instead premature challenges to the class definition.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The reviewing court accepts the plaintiff's

factual allegations as true and draws all reasonable inferences in favor of the nonmoving

party.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  But "[c]ourts are not bound to

accept as true a legal conclusion couched as a factual allegation, and factual allegations

must be enough to raise a right to relief above the speculative level."  *Id.*

### False or Misleading Representation

Each of Plaintiff's claims require her to plead a materially false or misleading

representation.  *See, e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)

(holding that to state a claim under N.Y. Gen. Bus. Law §§ 349 and 350, "a plaintiff must

allege that a defendant has engaged in (1) consumer-oriented conduct that is (2)

materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice"); *DiBartolo v. Abbott Lab'ys*, 914 F. Supp. 2d 601, 625

(S.D.N.Y. 2012) (holding that an element of a breach-of-warranty claim of this type

requires an "affirmation of fact or promise by the seller, the natural tendency of which

was to induce the buyer to purchase" and that "[t]he affirmation of fact or promise must

have been false or misleading when made")[1]; *Axon v. Florida's Nat. Growers, Inc.*, 813

F. App'x 701, 706 (2d Cir. 2020) (requiring fraud or other circumstance to render the

defendant's enrichment "unjust" for purpose of unjust enrichment claim).

      As even Plaintiff's cited caselaw recognizes, "[s]everal courts. . . have observed

that a study concluding that a product does not alleviate osteoarthritis symptoms does not

speak to whether that the same product supports general joint health." *Lytle*, 2019 WL

8060070, at *5 (collecting cases); *see also McCrary v. Elations Co.*, No. EDCV 13–0242

JGB (OPx), 2013 WL 6403073, at *3 (C.D. Cal. April 24, 2013). ("[T]he studies

pertaining to the ineffectiveness of . . . ingredients in the treatment of osteoarthritis are

inapposite.  These studies do not plausibly demonstrate that [the product] does not

improve joint comfort, flexibility, or health."); *Eckler v. Wal-Mart Stores, Inc.*, No. 12–

CV–727–LAB–MDD, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) ("The studies

allegedly show that glucosamine doesn't alleviate the symptoms of osteoarthritis in the

hip and knee.  That is a very particular showing with respect to a degenerative joint

disease and . . . it doesn't address the far more general claim [made by the defendant]

that glucosamine is good for the body's joints."); and *Padilla v. Costco Wholesale Corp.*,

No. 11 C 7686, 2013 WL 195769, at *3 (N.D. Ill. Jan. 16, 2013); ("[T]he . . . product

label does not claim to be effective for the treatment of osteoarthritis. Thus, clinical

---

[1]    Plaintiff's claim under the Magnuson-Moss Warranty Act ("MMWA") claim rises
and falls with its breach of express warranty claim. *See Sipe v. Workhorse Custom
Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009) ("The MMWA grants the holder of a
limited warranty a federal cause of action for a breach of warranty under the applicable
state law.")

studies regarding the ineffectiveness of glucosamine or chondroitin in the treatment

of osteoarthritis does not have any bearing on the truthfulness of the actual

representations made on the. . . product label.").[2]  These cases "reflect the principle that a

study's conclusion must directly address the misrepresentation it is cited to debunk."

*Lytle*, 2019 WL 8060070, at *5.

       The parties in *Lytle* did not submit for the court's review copies of the Moreau and

Scott Studies, and the court thus accepted as true the plaintiffs' allegations that those

studies concluded that glucosamine and chondroitin supplements "ha[d] no effect on

activity levels."  *Id.* at *6, *6 n.4.  The court then concluded that such findings directly

contradicted a manufacturer's representations that its glucosamine and chondroitin

supplement would "support and protect joints," "keep 'em moving," and "help them

climb stairs, rise, and jump."  *Id.  See also Kroessler v. CVS Health Corp*., 977 F.3d 803,

814 (9th Cir. 2020) (accepting as true a plaintiff's allegation that certain glucosamine

studies directly contradicted a manufacturer's representations regarding joint health

because the studies themselves were "not attached to the pleadings or otherwise part of

the record").

---

[2]      Plaintiff attempts to distinguish *McCrary* and *Eckler* because the product labels at
issue in those cases also disclaimed use as a disease treatment.  *See* ECF No. 18 at 4.  But
the disclaimer was not dispositive in either case.  *See McCrary*, 2013 WL 6402217, at *4;
*Eckler*, 2012 WL 5382218, at *6.  Indeed, other courts have come to the same conclusion
in the absence of such a disclaimer.  *Padilla*, 2013 WL 195769, at *3.  Regardless of
whether a glucosamine product label contains a disclaimer, if the label does not claim to
be effective for the treatment of osteoarthritis or joint disease, studies regarding the
product's effectiveness in the treatment of such diseases do not lend plausibility to an
allegation that the product label is false or misleading.  *See id.*

In this case, by contrast, complete copies of the Moreau and Scott Studies, as well as the other publications cited by Plaintiff, are properly before the Court.  The Court has reviewed the publications and determined that they are focused on the effectiveness of glucosamine or chondroitin in the treatment of osteoarthritis, joint disease, and joint pain—topics which are not mentioned Defendant's product labels or website. Defendant's alleged representations did not relate to mobility, joint pain, or particular activity levels.  Rather, the representations more broadly claimed that the Supplements "help[] support joint health, flexibility, and cartilage" and "maintain healthy canine joint function and connective tissue."  Compl. at ¶¶ 2-3.  And nothing in the conclusions of the publications cited by Plaintiff can be plausibly said to directly address or contradict such representations.

In short, it is Plaintiff's burden to plausibly plead falsity or deception.  Her only attempt to do so here is to cite to the above-noted publications and to state that the Supplements had no impact on her dog's osteoarthritis or joint pain.  But the alleged representations on which Plaintiff relied do not claim otherwise.  Plaintiff has thus failed to plausibly allege a false or misleading representation, and the Court will dismiss each of her claims without reaching Defendant's alternative arguments.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED**. ECF No. 14.

A separate Order of Dismissal will accompany this Memorandum and Order.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2022.